UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DMC MACHINERY AMERICA CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-00369-SEB-MPB |
| | ) | |
| HEARTLAND MACHINE & ENGINEERING, LLC, ILRIM NANO TEC CO., LTD., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| HEARTLAND MACHINE & ENGINEERING, LLC, HEARTLAND MACHINE & ENGINEERING, LLC, | ) | |
| | ) | |
| Counter Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DMC MACHINERY AMERICA CORP., DMC MACHINERY AMERICA CORP., | ) | |
| | ) | |
| Counter Defendants. | ) | |

**ORDER ON PLAINTIFF-COUNTERDEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS (DKT. 125)**

Plaintiff-Counterdefendant DMC Machinery America ("DMCA"), a Michigan corporation, sued among others Defendant-Counterclaimant Heartland Machine and Engineering ("Heartland"), an Indiana limited liability company. Dkt. 104. Heartland answered and counterclaimed. Dkt. 124. Now before the Court is DMCA's motion to dismiss Heartland's counterclaim in part for failure to state a claim on which relief can be

1

granted under Federal Rule of Civil Procedure 12(b)(6). Dkt. 125. For the reasons explained below, the motion is granted in part and denied in part.

## Background

The facts are recited as they appear in Heartland's counterclaim. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). Heartland is a vendor of machine tools. For several years, it purchased its inventory from "DMC," a South Korean manufacturer, through DMC's American importer and affiliate, DMCA. In 2013, DMC and DMCA began using substandard parts in their machine tools, unbeknownst to Heartland, as a cost-savings measure instituted in response to serious financial difficulties the companies were then facing. As a result, the machine tools delivered to Heartland did not perform as specified or warranted.

As DMC and DMCA's financial situation worsened, deliveries of new machine tools to Heartland were delayed and repairs to the defective machine tools already delivered could not be made for want of replacement parts. By mid-2014, DMC had declared bankruptcy and sold its machine-tool business to "FFG," a subsidiary of a Taiwanese company. But because DMCA was already in default on several financial obligations to FFG, FFG would not do business with DMCA. Accordingly, Heartland was forced to buy new DMC machine tools from FFG's American distributor, "Hanhwa," a South Korean company, and to purchase replacement parts from FFG directly.

DMCA brought this action in the Northern District of Illinois on January 8, 2016. Dkt. 1. It was transferred to this Court on February 9, 2017. Dkt. 76. The now operative *Amended Complaint* was filed on September 7, 2017, Dkt. 104, to which Heartland filed

2

its *Amended Answer* on June 4, 2018. Dkt. 124. The answer contains Heartland's counterclaims for negligent misrepresentation (Count 1), fraudulent misrepresentation (Count 2), and breach of contract (Counts 3 and 4).

Count 1 alleges DCMA's duty "to act with reasonable care in the information and products provided to Heartland" and its breach of that duty "by misrepresenting its products as well as its ability to obtain replacement parts." Countercl. ¶¶ 26, 30. Count 2 alleges DCMA's fraud in knowingly misrepresenting to Heartland "that the products it sold to Heartland were in good and working condition . . . with the intent for Heartland to continue making sales . . . ." *Id.* ¶ 33. Count 3 alleges DCMA's breach of an "agreement" to "provide DMC manufactured tools in a good, new, and working condition, and according to manufacturer specifications[,]" *id.* ¶ 36, and to "provide replacement parts for DMC manufactured machine tools as needed . . . ." *Id.* ¶ 37. Count 4 alleges DMCA's breach of an "agreement" providing that, "if Heartland would make new warehouse space available for DCMA, DCMA would move inventory to Heartland's campus and pay Heartland rent . . . ." *Id.* ¶ 41.

On June 22, 2018, DMCA moved under Rule 12(b)(6) to dismiss the misrepresentation claims in Counts 1 and 2 as barred by the economic-loss rule and the fraudulent misrepresentation claim in Count 2 as insufficiently pleaded under Rule 9(b).

## **Standard of Decision**

A motion under Rule 12(b)(6) tests the legal sufficiency of a pleading. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). In determining a pleading's sufficiency, we accept as true all factual allegations and draw every nonspeculative

inference in the pleader's favor. *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014). Generally, a pleading is legally sufficient when it contains a short and plain statement plausibly showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Claims of fraud, however, must be pleaded with particularity. Fed. R. Civ. P. 9(b).

> Under Rule 9(b), a [pleader] must allege "the first paragraph of any newspaper story": "the who, what, when, where, and how" of the alleged fraud. *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). While it is "erroneous[ ]" to "take an overly rigid view of th[is] formulation," *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011), the application of which "may vary on the facts of a given case[,]" *id.*, Rule 9(b) must require "some . . . means of injecting precision and some measure of substantiation . . . [,]" *id.* (quoting 2 James W. Moore, *Moore's Federal Practice* § 9.03 (3d ed. 2010)), if it is to serve its important functions of "forc[ing] the plaintiff to conduct a careful pretrial investigation" and "protect[ing] defendants from [the] 'privileged libel'" of fraud charges. *Id.* at 441 (quoting *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005); *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 594 (7th Cir. 2003)). "It is enough to show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." *Lusby*, 570 F.3d at 854–55.

*United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Ind., Inc.*, 305 F. Supp. 3d 964, 974 (S.D. Ind. 2018) (Barker, J.).

## Analysis

### I. Choice of Law

We next address choice of law as a preliminary matter. DMCA's motion assumes

4

the applicability of Indiana law to Heartland's tort claims. Heartland says it "does not concede the application of Indiana law here, but for purposes of this Motion, there is no conflict of law[,]" Br. Opp. 6 n.1, and its brief goes on to apply Indiana law. It is true that federal courts "do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991). Still, it is puzzling that a claimant would not know from the outset of its case which jurisdiction's law creates its cause of action, not least because because it is strictly bound to raise only claims which "are warranted by existing law." Fed. R. Civ. P. 11(b)(2). It would risk prejudice to DCMA and general upheaval to decide DCMA's Rule 12(b)(6) motion under one state's law while leaving open the possibility of applying a different state's law at summary judgment or trial.

"Ours is an adversary system," *Wood v. Mid-Valley Inc.*, 942 F.2d at 426–27; the time for Heartland to assert its choice-of-law arguments, if it has any, is now, when the choice must be made. Heartland asserts there is no conflict of law—but we are left wondering which states' law Heartland has consulted in reaching that conclusion. Heartland points to no other jurisdiction besides Indiana whose law is even arguably applicable. Accordingly, we take Heartland's "nonconcession" as a concession. And, in any event, Heartland is located in Indiana; its injuries if any were suffered in Indiana; Indiana courts generally apply the law of the place of injury to tort claims, *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073–74 (Ind. 1987); and in this respect we must do as Indiana courts would. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). We thus declare that Indiana law governs Heartland's tort claims.

## II. Economic-Loss Rule

We address the economic-loss rule as raised in DMCA's Rule 12(b)(6) motion attacking Heartland's counterclaim because Indiana courts treat application of the rule as negating the plaintiff's cause of action in tort, not as the defendant's affirmative defense. Fed. R. Civ. P. 12(b) ("Every defense . . . must be asserted in the responsive pleading . . . [,]" with seven exceptions.); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (affirmative defenses improper bases for grant of Rule 12(b)(6) motions); *Richards v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir. 2012) (same); *Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 728–29 (Ind. 2010) (characterizing applicability of economic-loss rule as turning on existence of defendant's tort duty); *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 746, 748–50 (Ind. 2010) (same); *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 152–55 (Ind. 2005) (same); *Magic Circle Corp. v. Crowe Horwath, LLP*, 72 N.E.3d 919, 923–25 (Ind. Ct. App. 2017) (considering whether plaintiff failed to state claim by operation of economic-loss rule). *Accord Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 272 (Cal. 2004) (plaintiff must demonstrate injury beyond); *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 123 (Iowa 1988) (no compensable injury when suffered); *Wyman v. Ayer Props., LLC*, 979 N.E.2d 782, 787 (Mass. App. Ct. 2012) (defendant need not plead), *aff'd in part and rev'd in part on other grounds*, 11 N.E.3d 1074 (Mass. 2014); *Woods v. RE Inv., Inc.*, No. 338139, 2018 WL 4036539, at *3 (Mich. Ct. App. Aug. 23, 2018) (same); *Crowder v. Vandendeale*, 564 S.W.2d 879, 882–84 (Mo. 1978) (*en banc*) (no duty to prevent); *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867–

68 (Tex. 2007) (defendant need not plead). *Contra Republic Nat'l Bank v. Araujo*, 697 So. 2d 164, 166 (Fla. Dist. Ct. App. 1997) (defendant must plead); *Trinity Lutheran Church v. Dorschner Excavating*, 710 N.W.2d 680, 688 (Wis. Ct. App. 2006) (defendant bears burden of showing).

Under Indiana law,

> [a] defendant is not liable under a tort theory for any purely economic loss caused by its negligence (including, in the case of a defective product or service, damage to the product or service itself). [*Gunkel*, 822 N.E.2d at 153.] This rule precluding tort liability for purely economic loss—that is, pecuniary loss unaccompanied by any property damage or personal injury (other than damage to the product or service itself)—has become known as the "economic loss rule" . . . .

*Indianapolis-Marion Cty. Pub. Library*, 929 N.E.2d at 726–27. The rule embodies a judgment that "'tort law is a superfluous and inapt tool for resolving purely commercial disputes[,]'" which ought instead to be resolved by "'a body of law designed for such disputes[,]'" that is, the law of contracts. *Id.* at 729 (quoting *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990) (Posner, J.)). That law should not be nullified by plaintiffs' pursuit of (often more generous) tort recoveries. *Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 173 (Ind. 2003).

As for Count 2, fraudulent misrepresentation, or more simply fraud, *see Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 701 (Ind. Ct. App. 2004), the economic-loss rule presents no difficulty, for it does not apply to fraud claims. The "default position in Indiana is that in general, there is no liability in tort for pure econonomic loss caused *unintentionally*[,]" *Indianapolis-Marion Cty. Pub. Library*, 929 N.E.2d at 736, (original

7

emphasis removed, emphasis added), that is, for loss otherwise recoverable on negligence or strict liability theories. *Id.* at 727–28 (reviewing history of rule in Indiana in negligence and products liability cases). *Also Gunkel*, 822 N.E.2d at 153 ("under the Products Liability Act and under general negligence law"). We have found no Indiana case, and DMCA cites none, in which recovery for fraud was barred by the economic-loss rule.

As for Count 1, negligent misrepresentation, the tort is recognized in Indiana as "one of the exceptions to the economic loss rule[.]" *U.S. Bank*, 929 N.E.2d at 744. "'[N]egligent misrepresentation may be actionable and inflict only economic loss[.]'" *Id.* at 747 (quoting *Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 174 (Ind. 2003)). Ordinarily, however, when the parties share a connection in contract, whether through immediate contractual privity or "a network or chain of contracts," the economic-loss rule nonetheless remits the negligent-misrepresentation plaintiff to its contract remedies, if any. *Indianapolis-Marion Cty. Pub. Library*, 929 N.E.2d at 741. *Also U.S. Bank*, 929 N.E.2d at 745. But "the existence or non-existence of a contract is not the dispositive factor for determining whether a tort action is allowable where special circumstances and overriding public policies have carved out exceptions for tort liability." *U.S. Bank*, 929 N.E.2d at 748–49 (discussing *Restatement (Third) of Economic Torts and Related Wrongs* § 9, cmt. f (Council Draft No. 2, 2007) (listing factors relevant in determining existence of duty of care in transmission of information)).

Here, Counts 1, 2, and 3 all relate to DCMA's provision of defective machine tools. DMCA points to the damages allegation for Count 3, breach of contract, and notes

8

it is identical to the damages allegation for Count 1, negligent misrepresentation. *Compare* Countercl. ¶ 31 *with id.* ¶ 39. There is no allegation of personal injury or damage to other property. Accordingly, argues DCMA, Heartland has dressed up a contract claim in tort clothes. "Because Heartland is connected with DCMA by contracts," it concludes, "the economic loss rule precludes Heartland from proceeding in tort in this case." Br. Supp. 6.

We agree with Heartland that dismissal on this ground is, at least for now, not warranted. First, as *U.S. Bank* teaches, the existence of a contract does not necessarily obviate a defendant's duty to take ordinary care in delivering information to foreseeable plaintiffs. 929 N.E.2d at 748–49. Because DCMA has not shown or even argued that, contract or no, it was not under such a duty as a matter of law, it is not now entitled to dismissal.

Second, as Heartland argues, even if the existence of a contract were a bar to recovery for negligent misrepresentation here, Heartland has not pleaded itself out of court on its negligent misrepresentation claim by including in the same pleading a breach-of-contract claim. A claimant may plead inconsistent claims in the alternative, Fed. R. Civ. P. 8(d)(2), which does not require "particular words" but simply a "formulation from which it can be reasonably inferred that this is what [it] w[as] doing." *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000).

The only "agreement" between the parties alleged in the counterclaim's general allegations is the warehousing agreement. Countercl. ¶ 9. The breach of that agreement is alleged in Count 4. *Id.* ¶ 41. It appears to be wholly unrelated to the misrepresentation

claims, Counts 1 and 2. The only allegation of an agreement relating to the subject-matter of those claims—DMCA's failure to supply "machine tools in a good, new, and working condition"—appears under Count 3. *Id.* ¶ 36. The misrepresentation claims neither contain nor refer to any such agreement. *Compare The Sharrow Grp. v. Zausa Dev. Corp.*, No. 04 C 6379, 2004 WL 2806193, at *3 (N.D. Ill. Dec. 3, 2004) (dismissal of alternatively pleaded quasicontract counts appropriate where such claims incorporate and re-allege "valid and enforceable agreements" from complaint's general allegations). What is more, even if such an agreement were alleged, Count 2, fraud, furnishes plausible grounds for avoiding it. *Compare Harley Marine Servs. v. Manitowoc Marine Grp.*, 759 F. Supp. 2d 1059, 1062–63 (E.D. Wis. 2010) (where no such grounds, plaintiff must stand on contract claim). Accordingly, there is a reasonable inference that Heartland has adequately pleaded (potentially) inconsistent claims to relief in the alternative.

## III. Particularity

We agree with DCMA, however, that the fraud claim in Count 2 has not been pleaded with the required particularity. The counterclaim contains only the most general description of the alleged fraud. This is amply borne out in Heartland's defense of DCMA's motion.

For example, in attempting satisfy *DiLeo*'s "first paragraph" gloss on the Rule 9(b) standard, Heartland argues, "The 'Who' in this matter has already been established: the parties involved are DCMA and Heartland." Br. Opp. 8. If all Rule 9(b) required was a recitation of the parties' identities, it would mean little, indeed. For that reason, we have previously rejected as "risible" the suggestion that a plaintiff satisfies Rule 9(b) by

alleging it was defrauded by a corporate defendant. *Kietzman*, 305 F. supp. 3d at 979. "[DMC America Corporation] did not [defraud] any[one] within the meaning of Rule 9(b); one of [its] employees did. But *which* of them? [Heartland] cannot tell us." *Id.*

Similarly, as to the "when," Heartland attempts to link up Paragraph 33 of its counterclaim, alleging that the fraud occurred "[a]t the time DCMA represented that the products it sold to Heartland were in good and working condition," Countercl. ¶ 33, with Paragraph 9, which has nothing to do with such representations, but rather with the warehousing agreement, which was allegedly struck "in early 2013[.]" *Id.* ¶ 9. Accordingly, Heartland has alleged nothing more particularized than the tautology that the fraud happened when it happened.

We are careful not to take an "overly rigid" view of the *DiLeo* gloss, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*, 631 F.3d at 442, but there must nonetheless be "some . . . means of injecting precision" operative in a fraud claim to satisfy Rule 9(b). Here, there are no such means, though Heartland will have the opportunity to employ them, if it can, in an amended claim.

## Conclusion and Order

For the reasons given above:

DMCA's motion to dismiss, Dkt. 125, is GRANTED as to Count 2 of Heartland's counterclaim in its *Amended Answer*. Dkt. 124.

Count 2 is DISMISSED WITHOUT PREJUDICE with leave to replead, Fed. R. Civ. P. 15(a)(2), within TWENTY-ONE DAYS from the date of this order, whereafter dismissal will ripen into one with prejudice.

DMCA's motion to dismiss, Dkt. 125, is DENIED as to Count 1 of Heartland's counterclaim in its *Amended Answer*. Dkt. 124.

IT IS SO ORDERED.

Date: 1/11/2019

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Stephen E. Arthur
HARRISON & MOBERLY (Indianapolis)
sarthur@harrisonmoberly.com

Stephen M. Brandenburg
CAMELI & HOAG P.C.
sbrandenburg@camelihoaglaw.com

Hyun Suk Choi
Choi & Park, LLC
hchoi@choiandpark.com

John D. Cox
LYNCH COX GILMAN & MAHAN PSC
jcox@lcgandm.com

Grover Burton Davis
MCCLURE MCCLURE & DAVIS (Indianapolis)
gbdavis@gbd.law

James Thomas Flanigan
MCCLURE MCCLURE & DAVIS
jflanigan@gbd.law

Susan J. McGinty
MCCLURE MCCLURE & DAVIS
smcginty@mmdhlaw.com

Charles E. Oswald, IV
HARRISON & MOBERLY (Indianapolis)
coswald@harrisonmoberly.com

Chull Soon Park
Choi & Park, LLC
cpark@choiandpark.com

Nancy E. Sasamoto
MASUDA FUNAI EIFERT & MITCHELL, LTD.
nsasamoto@masudafunai.com

David Joseph Stein
Masuda, Funai, Eifert & Mitchell, Ltd.
203 North LaSalle Street
Suite 2500
Chicago, IL 60601

Jiwon Juliana Yhee
Masuda, Funai, Eifert & Mitchell, Ltd.
203 North Lasalle Street
Suite 2500
Chicago, IL 60601

James B. Zaczek
Law Offices of James B. Zaczek
311 N. Aberdeen
Suite 300-B
Chicago, IL 60607